```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
```

Mohammed ANWAR,

        **Plaintiff,**

  -against-

PAAM GROUP, INC., et al.,

        **Defendants.**

```
-----------------------------------------------------------------X
```

12-CV-03420 (LTS)(SN)

REPORT AND
RECOMMENDATION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/13/2013

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE LAURA TAYLOR SWAIN:**

On April 30, 2012, the plaintiff Mohammed Anwar commenced this action against the Defendants PAAM Group, Inc. (d/b/a Nirvana Indian Culinary Bliss) and Anil Amin (collectively, the "defendants"), alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law.

After the parties reached a settlement and executed a written settlement agreement that was approved by the Court as fair and reasonable, the defendants failed to pay the full settlement amount. The plaintiff has filed a motion to enforce the settlement agreement and seeks an order for the release of the funds from defense counsel's escrow account, which represents the first installment of the settlement sum, and a judgment entered for the remainder of the settlement sum. Although the defendants do not contest that an agreement was reached, they oppose the relief the plaintiff seeks and argue that the plaintiff is entitled only to restore the case to the litigation docket. Because I find that the defendants have breached a binding and enforceable

agreement, but that the plaintiff does not have a right to the funds held in defense counsel's custody, I recommend that the plaintiff's motion be GRANTED in part and DENIED in part.

## BACKGROUND

**I.       Factual Background**

The plaintiff Mohammed Anwar worked as a food runner at the defendants' restaurant, Nirvana Indian Culinary Bliss, from December 2009 to April 2012, and alleges that he worked 72 hours a week. In his complaint, the plaintiff alleges that the defendants paid him an hourly rate below the federal minimum wage, failed to pay him mandated overtime, and impermissibly required him to participate in a tip-sharing system in which his tips were distributed among managers and other non-tip employees.

After the parties appeared before me for a settlement conference on January 14, 2013, they executed a settlement agreement that included a monetary sum, which was to be delivered in two payments into defense counsel's escrow account[1] and then transferred as a lump sum to the plaintiff upon the Court's approval of the settlement agreement. The agreement also contained a confidentiality clause and mutual releases. The parties memorialized the agreement in a written settlement agreement drafted by the defendants. The written agreement states that the defendants will be in default if either of the settlement payment deposits is late, at which time the plaintiff retains the right to restore his case to the litigation docket and pursue his claims against the defendants.

---

[1] The Court uses the term "escrow account" in this Report and Recommendation because that is the term that appears in the parties' settlement agreement. As discussed below, however, whether the settlement agreement created a true escrow arrangement is an issue currently before the Court.

The defendants timely placed the first agreed-upon portion of the settlement amount into their counsel's escrow account, but then failed to place the remaining amount in the account.

## II.     Procedural Background

The Court issued an Order of Dismissal on January 16, 2013, with leave to reopen the case upon letter application within 180 days. On June 27, 2013, the Court entered Final Judgment, finding the settlement agreement, which the Court ordered to be filed under seal, fair and reasonable.

On July 16, 2013, the Court granted the plaintiff's letter application to reopen the case in light of the plaintiff's claim that the defendants had breached material terms of the settlement agreement. The plaintiff filed this Motion to Enforce the Settlement Agreement on September 24, 2013. The defendants opposed the motion on October 1, 2013, and the plaintiff filed his reply on October 7, 2013.

The plaintiff seeks (1) a court order requiring defense counsel to transfer the partial sum from its escrow account to the plaintiff, and (2) a judgment entered against the defendants for the remaining amount of the settlement sum. Additionally, the plaintiff asserts that, because the defendants breached the settlement agreement, the Court should order that the agreement be unsealed.

## LEGAL STANDARD

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." Mtgs & Exp'tns Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974) (internal citations omitted). Indeed, "[s]uch power is 'especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom

proceedings.'" Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 444 (2d Cir. 2005) (quoting Janus Films, Inc. v. Miller, 801 F.2d 578, 583 (2d Cir. 1986)).

A settlement agreement is a "contract that is interpreted according to general principles of contract law." Omega Eng'g., 432 F.3d at 443. Once a court finds that parties reached a settlement agreement, the prevailing view is that such agreement is binding on all parties, "even if a party has a change of heart between the time of the agreement . . . and the time it is reduced to writing." Elliot v. City of New York, 11 Civ. 7291 (RWS), 2012 WL 3854892, at *2 (S.D.N.Y. Sept. 5, 2012); accord U.S. v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect.") (citing Ackermann v. U.S, 340 U.S. 193, 198 (1950) (litigants cannot be relieved of the consequences of their strategic decisions merely because hindsight indicates that a decision was wrong)); Omega Eng'g., 432 F.3d at 445 ("It is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made."); Rivera v. State, 115 A.D.2d 431, 432 (1st Dep't 1985) (refusing to vacate a settlement because the court found "nothing but afterthought and change of mind") (citations omitted).

A presumption in favor of enforcement reflects the value that courts place on negotiated settlement agreements. Willgerodt v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997), aff'd sub nom. Majority Peoples' Fund for 21st Century, Inc. v. Hohri, 159 F.3d 1347 (2d Cir. 1998) ("Settlement agreements are strongly favored in New York and may not be lightly cast aside."); Hallock v. State, 64 N.Y.2d 224, 230 (1984). It is also consistent with basic contract principles, which maintain that reformation of a settlement agreement is an extraordinary remedy. 27 Richard A. Lord, Williston on Contracts § 70:33 (4th ed. 2012) (reformation is appropriate only

to correct a material, mutual mistake); Beecher v. Able, 441 F. Supp. 426, 429-30 (S.D.N.Y. 1977), aff'd, 575 F.2d 1010 (2d Cir. 1978).

## DISCUSSION

I.  **Whether the Plaintiff Is Entitled to the Funds in Defense Counsel's Custody**

The plaintiff first seeks a court order requiring defense counsel to transfer the partial settlement amount that the defendants have placed in defense counsel's "client escrow account." He argues that because these funds were "specifically segregated for Plaintiff" as the first installment in an escrow arrangement, he is entitled to the partial payment. Because the settlement agreement does not confer the plaintiff a right to this specific property, the plaintiff is not entitled to the money in defense counsel's escrow account. The Court therefore recommends denying the plaintiff's motion with respect to this request.

An escrow agent has a fiduciary duty to both parties to deliver the escrow funds in compliance with the escrow agreement. See Carruthers v. Flaum, 450 F. Supp. 2d 288, 317 (S.D.N.Y. 2006). The plaintiff argues that defense counsel is acting as an escrow agent and, by refusing to deliver the escrow account funds, is breaching his fiduciary duty to the plaintiff. Thus, the Court must first resolve whether the settlement agreement created a true escrow agreement.

To create an escrow agreement under New York law, "'there must be a written agreement under which the grantor deposits property with and relinquishes control to an [escrow agent] with the subsequent delivery of the property by the [escrow agent] to the grantee conditioned upon the happening of some event.'" In re AppOnline.com, Inc., 315 B.R. 259, 274 (Bankr. E.D.N.Y. 2004) (quoting Doran v. Treiling, 21 B.R. 940, 943 (Bankr. E.D.N.Y. 1982)); see also Gianoukas v. Campitiello, 09 Civ. 1266 (PAC), 2009 WL 3270808, at *2 (S.D.N.Y. Oct. 13,

2009) (dividing the above requirements for escrow into distinct elements). All of the above conditions must be met; an escrow agreement is not created simply by delivering funds to an escrow agent, id., or "calling a transaction an escrow," Citadel Theatre v. MAW Canadian Corp., 85 Civ. 9711 (MGC), 1987 WL 9699, at *6 (S.D.N.Y. Apr. 17, 1987). Further, the proponent of an escrow agreement "must also show the alleged escrow agent agreed to accept that responsibility." Friedman v. Stern, 91 Civ. 0985 (LJF), 1992 WL 58878 (S.D.N.Y. Mar. 13, 1992). Whether an escrow agreement has been created depends on the parties' intent. Citadel Theatre, 1987 WL 9699, at *5.

The Court first looks to the language of the settlement agreement to determine whether it unambiguously created an escrow arrangement in which the defendants were the grantors, the plaintiff the grantee, and defense counsel the escrow agent. See Doe v. Pataki, 481 F.3d 69, 81 (2d Cir. 2007) (quoting Roberts v. Consolidated Rail Corp., 893 F.2d 21, 24 (2d Cir. 1989)) ("This 'plain meaning' approach to contract construction is the well-established law of the circuit. . . . '[A]bsent an ambiguity in a written contract, courts will not look to the underlying [subjective] intent of the parties in executing the contract.'"); Singer v. Xipto Inc., 852 F. Supp. 2d 416, 423 (S.D.N.Y. 2012) ("In assessing intent, courts generally look solely at objective signs of intent, and do not consider subjective evidence of intent.") (internal quotation marks and brackets omitted).

Relevant to this dispute, paragraph 5(b) of the agreement provides:

Defendants shall pay the entire Settlement Amount into their attorney's escrow account on or before Monday July 1, 2013 or on an alternate date mutually agreed to by the parties and confirmation of this payment shall be provided to Plaintiff's counsel by 5:00pm on that date. At least one third (1/3) of the Settlement Amount

> ($[redacted])[2] shall be p laced into Defendants' attorney's escrow account on or before April 1, 2013 and confirm ation of this payment shall be provided to Plaintiff's counsel by 5:00pm on that date. De fendants shall be in default if either of the Settlem ent Amount deposits are not timely made at which tim e Plaintiff reserves the right to res tore the Complaint to the docket o f the court and seek maximum relief under the law for the initial com plaint, the tim e for its amendment having passed on Novem ber 30, 2013 as noted in the Court's Scheduling Order dated October 26, 2012.

And paragraph 5(f) provides:

> Plaintiff agrees that he will receive from Defendants the consideration set forth in Paragraph 5 above following the Court's a pproval of this Agreem ent. Plaintiff acknowledges and agrees that the Cour t's approval of the Agreement is a condition precedent to the provisio n of a ny of the consid eration set forth in Paragraph 5 above. . . . The Settlem ent Amount will be tendered to Plaintiff' s attorneys within three (3) busin ess days of the date the Court appro ves this Agreement.

The Court finds that the settlement agreement constitutes "an agreement regarding the subject matter and delivery of the funds." Gianoukas, 2009 WL 3270808, at *2 (internal citation omitted). It sets out the terms of consideration for the agreement and the framework governing how the defendants were to place their payments into their counsel's escrow account. The settlement agreement also provides for the delivery of the property (the entire settlement sum) to plaintiff conditioned upon the Court's approval of the settlement agreement. See id. The remaining elements of an escrow arrangement, however, are not satisfied, thus demonstrating that the settlement agreement did not create an escrow arrangement for the plaintiff's benefit.

The agreement does not identify defense counsel as an escrow agent with the responsibility of delivering the property to the grantee. Rather, the agreement states that

---

[2] These terms are described in detail in the parties' submissions and are therefore not confidential. Although the Court recommends that the Settlement Agreement be unsealed, see infra, because there is no dispute as to the settlement sum and no need to disclose it now, the amount is redacted here to allow defendant's an opportunity to object to my recommendation.

"Plaintiff agrees that he will receive from *Defendants* the consideration set forth . . . above." Because the agreement does not contemplate defense counsel delivering the property, there is no evidence that counsel agreed to act in that capacity. In addition, the Court finds that the property was never relinquished or delivered into the escrow account by the defendants. The property contemplated by the agreement is the full settlement amount. The defendants cannot be found to have delivered that property into escrow or to have relinquished control over the distinct property (the partial amount) that they did deliver. As such, defense counsel maintained its fiduciary duty to its clients only and remains bound to comply with its clients' instructions as to the disbursement or return of any client funds in its custody. See 22 NYCRR 1200, Rule 1.15 (New York rule of professional conduct describing an attorney's obligations as to a client's funds in the attorney's custody). Thus, while the defendants delivered funds into what their defense counsel refers to as their escrow account, these funds were not specifically segregated for the plaintiff. The payment was in compliance with one of the settlement agreement's deadlines, but because it was not the full settlement amount, it was not the property to be segregated for the plaintiff's benefit as contemplated by the agreement. Cf. Nat'l Union Fire Ins. Co. Pittsburgh, Pa. v. Proskauer Rose Goetz & Mendelsohn, 634 N.Y.S.2d 609, 614 (Sup. Ct. 1994), aff'd, 227 A.D.2d 106 (1st Dep't 1996) ("[T]he delivery [to the escrow agent] must be intended by the promisor as relinquishment of any right of possession and control of the property. Although the promisor retains a contingent right to repossess the property when the specified condition does not occur, the delivery of the property must be irrevocable until the occurrence or non-occurrence of the condition."). Therefore, the settlement agreement did not create an escrow arrangement, and the Court denies the plaintiff's motion as to this request.

Even if the settlement agreement were deemed an escrow agreement, the agreement provides only for payment to the plaintiff of the entire settlement sum. The agreement contains no terms that provide for a partial payment of the settlement amount to be delivered to the plaintiff, and there is no language in the agreement demonstrating that it was the parties' intent to effect such a provision. In fact, the agreement provides that the defendants shall be in default if *either* of the deposits is not timely made; thus, the agreement even contemplates satisfaction of the first installment and a default as to the remainder but does not provide as a remedy a partial payment to the plaintiff. The sole consequences that flow from such default that are expressed in the agreement are that the confidentiality provision shall be null and void, and the plaintiff may restore the complaint to the active litigation docket. Accordingly, this unambiguous contract does not evince an objective intent for the partial payment to the plaintiff from defense counsel.

## II.     Whether the Plaintiff is Entitled to a Settlement Judgment

As an alternative to the above request, the plaintiff seeks a judgment against the defendants for the full settlement amount as stated in the settlement agreement. The defendants do not dispute that the settlement agreement constitutes a valid contract, nor do they dispute that they are in breach of this contract. Rather, the defendants contend that the settlement agreement limits the remedies available for breach to only restoration of the original litigation. Thus, the Court must analyze the terms of the settlement agreement and first determine if there is ambiguity over whether the parties intended to restrict the plaintiff to the sole remedy of reopening the case. See Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011) ("In a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous. . . . When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms.").

9

As provided above, the settlement agreement states that, if the defendants fail to make a timely deposit into their counsel's account, the plaintiff reserves the right to immediately resume litigation. Under New York law, contractual limitations to remedies are generally enforceable. See, e.g., Koch Indus., Inc. v. Aktiengesellschaft, 727 F. Supp. 2d 199, 214-16 (S.D.N.Y. 2010); J & R Electronics Inc. v. Bus. & Decision N. Am., Inc., 12 Civ. 7497 (PKC), 2013 WL 5203134, at *5 (S.D.N.Y. Sept. 16, 2013); Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 553 (1992). Although the defendants argue that the parties agreed to non-recourse provisions that limited the plaintiff's relief to reopening the case, the Court finds that the settlement agreement neither contains such terms nor evinces the parties' intent to agree on such terms.

"It is well settled that a contract is unambiguous 'if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion.'" Abakan, Inc. v. Uptick Capital, LLC, __ F. Supp. 2d __, 2013 WL 1867337, at *2 (S.D.N.Y. May 2, 2013) (quoting Lockheed Martin Corp., 639 F.3d at 69). The language in the settlement agreement cited by the defendants is straightforward and unambiguous. The defendants were to place a specific portion of the settlement amount into defense counsel's account by April 1 and then place the remaining amount into the account by July 1. The defendants would then deliver the full settlement amount to the plaintiff upon the Court's approval of the settlement agreement. If the defendants failed to make either deposit by the specified date, the plaintiff reserved the right to resume the litigation, notwithstanding the release provisions of the settlement agreement. This language unambiguously identifies a condition upon which the plaintiff would have the option of resuming litigation. The language cannot, however, be reasonably interpreted as limiting the plaintiff's relief in the event of default.

This finding is reinforced by looking to the settlement agreement as a whole, as the Court must do here. See Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir. 2010) (quoting Bailey v. Fish & Neave, 8 N.Y.3d 523, 528 (2007)) ("The court should read the integrated contract 'as a whole to ensure that undue emphasis is not placed upon particular words and phrases.'"). The settlement agreement contains no terms regarding limited remedies, an exclusive remedy, or a sole remedy in the event of a contractual breach.[3] The language relied upon by the defendants simply grants the plaintiff rights he otherwise would have lost absent an express reservation – that is, the right to resume his litigation. But the right to move to enforce his contractual rights (or to file a claim for breach of contract) is always present unless otherwise abandoned. The defendants' proposed interpretation of the agreement would deprive the plaintiff of his right to enforce the contract. The Court may not interpret a contract in such a manner. See Camperlino v. Bargabos, 96 A.D.3d 1582, 1583 (4th Dep't 2012) (quoting Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (2004)) ("It is well settled . . . that 'courts may not by construction add . . . terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.'").

Therefore, the Court finds that the settlement agreement plainly does not limit the relief available to the plaintiff for the defendants' contractual breach. Because the defendants breached a valid contract, the plaintiff is entitled to a judgment against the defendants in accordance with the written terms of the settlement agreement.

---

[3] The Court notes that the parties did specify that, if the plaintiff seeks to reopen the litigation, his relief would be limited to his claims in the original complaint. This further supports a finding that, if the parties had intended to impose an absolute limit on the plaintiff's available remedies, they would have similarly reduced such a material term to writing.

**III.     Whether the Settlement Agreement Should be Unsealed**

The plaintiff requests that, in light of the defendants' breach of the settlement agreement, the Court order that the settlement agreement be unsealed. The defendants do not address this request in their opposition (other than to argue that the plaintiff breached the confidentiality provision when he initially filed a copy of the agreement as part of this motion).

The plaintiff acknowledges in the settlement agreement that the terms of confidentiality are a material part of the agreement and that such terms constitute part of the consideration. The agreement, however, provides that if the defendant defaults – by, for example, failing to pay the settlement sum – the "[confidentiality] provision shall be null and void . . . ." Because the defendants concede their breach, they are not entitled to the protection of the confidentiality provision. Such a conclusion is also consistent with the presumption that judicial records are open to public inspection. United States v. Amodeo, 71 F.3d 1044, 1047 (2d Cir. 1995); see also Cedar Swamp Holdings, Inc. v. Zaman, 476 F. Supp. 2d 303, 304 (S.D.N.Y. 2007) ("[T]he presumption is at its strongest when the document in question . . . has been submitted as a basis for judicial decision making") (quotation and citation omitted).

Accordingly, I recommend that the settlement agreement, previously filed under seal (see Docket No. 27), be publicly filed.

## CONCLUSION

For these reasons, I recommend that the plaintiff's Motion to Enforce the Settlement Agreement be (1) GRANTED to the extent it seeks a judgment against the defendants in the full amount stated in the settlement agreement; and (2) DENIED to the extent it seeks a court order requiring defense counsel to transfer to the plaintiff funds that are currently in its custody. Because the defendants concede their breach of the settlement agreement, the agreement voids

the confidentiality provisions. Accordingly, I further recommend that the settlement agreement be UNSEALED.

The defendants shall make payment in full within 30 days of any decision by Judge Swain adopting this report.

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Swain. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         December 13, 2013